907 So.2d 37 (2005)
Darrell SUIRE
v.
LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, et al.
Nos. 2004-C-1459, 2004-C-1460, 2004-C-1466.
Supreme Court of Louisiana.
April 12, 2005.
Opinion Concurring in Denial of Rehearing June 29, 2005.
*41 Mahtook & Lafleur, Ward Lafleur, Laura K. Theunissen, Lafayette, for Applicant in No. 2004-C-1459.
Broussard & Kay, Hal James Broussard, Ped C. Kay, III, Lafayette; Voorhies *42 & Labbe, Richard D. Chappuis, Jr., Lafayette; Gieger, LaBorde & Laperouse, LLC, Robert Irwin Siegel, Brendan Patrick Doherty, New Orleans; Oliver & Way, LLC, Kenny Layne Oliver, David Oliver Way, Lafayette, for Respondent in No. 2004-C-1459.
Gieger, LaBorde & Laperouse, LLC, Robert Irwin Siegel, Brendan Patrick Doherty, New Orleans for Applicant in No. 2004-C-1460.
Mahtook & Lafleur, Ward Lafleur, Laura K. Theunissen, Lafayette; Broussard & Kay, Hal James Broussard, Ped C. Kay, III, Lafayette; Voorhies & Labbe, Richard D. Chappuis, Jr., Lafayette; Oliver & Way, LLC, Kenny Layne Oliver, David Oliver Way, Lafayette, for Respondent in No. 2004-C-1460.
Oliver & Way, LLC, Kenny Layne Oliver, David Oliver Way, Lafayette, for Applicant in No. 2004-C-1466.
Gieger, LaBorde & Laperouse, LLC, Robert Irwin Siegel, Brendan Patrick Doherty, New Orleans; Mahtook & Lafleur, Ward Lafleur, Laura K. Theunissen, Lafayette; Broussard & Kay, Hal James Broussard, Ped C. Kay, III, Lafayette; Voorhies & Labbe, Richard D. Chappuis, Jr., Lafayette, for Respondent in No. 2004-C-1466.
CALOGERO, Chief Justice.
We granted these writs to consider the court of appeal's rulings on various summary judgment motions in this lawsuit alleging damages to property resulting from a Lafayette construction project. In addressing the court of appeal's judgment, we must consider, among other issues, (1) whether the installation of metal sheeting is "pile driving" under Louisiana Civil Code article 667, for purposes of the plaintiff's absolute liability claim; and (2) whether a general contractor and its insurer owe a duty to indemnify and defend the Lafayette City-Parish Consolidated Government ("the City") and / or the City's engineering firm against the plaintiff's claims pursuant to either (a) a contractual indemnity clause in the contract between the City and the general contractor, or (b) the additional insured provision in the insurance contract between the contractor and its insurer. For the reasons that follow, and with the specificity of the rulings recited, we affirm in part, reverse in part, and remand the case to the trial court.

FACTS
Darrell Suire, the plaintiff, owns a residence and parcel of land at 114 St. James Drive in the city of Lafayette, Louisiana. Through Suire's land passes the Belle Terre Coulee, a large channel that provides drainage for several Lafayette Parish subdivisions. In 1998, the City applied for a permit to undertake the Belle Terre Coulee Drainage Improvement Project, in which the Coulee was to be dredged and lined with concrete. The permit was granted, and the City selected Boh Brothers Construction Co. L.L.C. ("Boh Brothers") as general contractor for the project, and Dubroc Engineering, Inc. ("Dubroc") to supply the plans and specifications.
Before construction began, representatives of the City and Boh Brothers went door-to-door to explain the project to affected property owners, including Suire. Suire was informed that a servitude had been established to permit access to his property for purposes of the project. Suire also claims that representatives of the City, Boh Brothers, and Dubroc all assured him that they would be responsible for remedying any damages to his property caused by the construction.
In August 1999, the construction reached the area immediately adjacent to Suire's home, and continued through roughly the end of 1999 or early 2000. *43 The initial phase of the project called for construction of a box culvert on Suire's property to stabilize the sides of the channel and protect workers from cave-ins.[1] Constructing the box culvert entailed placing steel sheeting into the ground at distances of fifteen to thirty feet from the foundation of Suire's home. The sheeting measured around one-fourth to one-half inch thick, two feet wide, and twelve to fifteen feet long. The installation of the sheeting involved, first, pushing the sheeting into place with a backhoe.[2] Once in place, the bucket of the backhoe was used to pound the sheeting farther into the ground.
While the construction was ongoing, Suire began to notice damage to his home. Among other things, Suire observed cracks in the front door, the floor, the foundation, the ceiling, and the walls, crumbling of the mortar in the patio outside, and leaks in the roof.

THE COURTS BELOW
On April 25, 2001, Suire sued the City, Boh Brothers, and Dubroc, alleging that these defendants were jointly, severally, and solidarily liable for the damage to his property resulting from their negligence and / or strict liability in carrying out the construction project. Suire claimed that the defendants' wrongful acts included selecting deficient plans and specifications, using improper equipment, failing to exercise due care in operating and maintaining equipment, and, generally, "fail[ing] ... to act with the required degree of care commensurate with the existing situation." In addition to his negligence and strict liability claims, Suire sought recovery under a theory of absolute liability, claiming that the installation of the metal sheeting to construct the box culvert constituted the ultrahazardous activity of "pile driving." Finally, Suire alleged claims of trespass, breach of contract, detrimental reliance, res ipsa loquitur, and expropriation.[3]
The City and Dubroc filed a cross-claim against Boh Brothers, seeking defense and indemnification under the terms of the contract between the City and Boh Brothers. The City and Dubroc also filed a third party demand against National Union Fire Insurance Company of Pittsburgh and National Union Fire Insurance Company of Louisiana (collectively, "National Union"), Boh Brothers' insurer, seeking defense and indemnification as additional insureds under Boh Brothers' insurance policy.[4]
The parties filed numerous motions for summary judgment, on which the trial court ruled as follows:
 Dubroc's motion for summary judgment was granted, and all claims against Dubroc were dismissed with prejudice;[5]

*44  The court denied the plaintiff's motion for partial summary judgment on the absolute liability issue, finding, as a matter of law, that the installation of metal sheeting was not "pile driving" under Civil Code article 667. The City's motion on the absolute liability issue was granted and made effective as to Boh Brothers as well, even though Boh Brothers had not filed its own motion, because the court wished to avoid the illogical result that one defendant (Boh Brothers) would have to litigate the merits of the absolute liability claim while the other defendant (the City) would not.
 The City's and Dubroc's motion seeking defense from Boh Brothers and National Union was granted. The court found that National Union and Boh Brothers owed the City and Dubroc a limited defense against the absolute liability claim. This duty to defend was satisfied on the date of the hearing on the summary judgment motions, after which the court disposed of the absolute liability claim against the City and dismissed Dubroc from the case. Similarly, the court denied National Union's and Boh Brothers' motions opposing the City's and Dubroc's claim for defense;
 The court granted in part National Union's and Boh Brothers' motions opposing the City's and Dubroc's claim for indemnity and coverage, finding that dismissal of the absolute liability claim extinguished any duty to indemnify. Consistent with this holding, the court denied the City's and Dubroc's motion seeking indemnity;
 The court granted in part the City's motion for summary judgment seeking dismissal of Suire's claims of res ipsa loquitur, detrimental reliance, breach of contract, and expropriation; but, the court denied in part the City's motion seeking dismissal of the trespass claim, deferring this claim to the merits; and
 The court denied Boh Brothers' motion for summary judgment claiming immunity under La.Rev.Stat. 9:2771, a statute which provides for limited immunity for a contractor who has performed according to plans provided by a third party.[6]
Thus, following the trial court's rulings on the parties' summary judgment motions, many of the plaintiff's claims were dismissed as a matter of law: absolute liability involving the installation of metal sheeting, detrimental reliance, res ipsa loquitur, breach of contract, and expropriation. The plaintiff's claims of negligence and trespass still remained viable. Dubroc was dismissed from the case entirely, leaving Boh Brothers and the City as the primary defendants and National Union as third party defendant. Regarding *45 the City's and Dubroc's claim for defense, the trial court held that National Union and Boh Brothers owed a limited duty to defend the City and Dubroc against the absolute liability claim alone, and that this duty had been satisfied. Because the trial court dismissed the absolute liability claim, the City's and Dubroc's indemnity claim had been extinguished.
Suire, Boh Brothers, and National Union all appealed from the trial court's rulings. The plaintiff challenged the trial court's dismissal of his absolute liability, breach of contract, detrimental reliance, res ipsa loquitur, and expropriation claims as a matter of law. Boh Brothers and National Union disputed the trial court's determination that they owed the City and Dubroc a limited defense on the absolute liability claim. Finally, Boh Brothers appealed the dismissal of Dubroc from the case.
In an unpublished opinion, the Third Circuit affirmed in part, reversed in part, rendered in part, and remanded. Suire v. Lafayette City-Parish Consol. Gov't, et al., XXXX-XXXXX (La.App. 3 Cir. 4/7/04), 871 So.2d 1279. The court of appeal initially reversed the trial court's judgment on the absolute liability issue, finding that the installation of metal sheeting qualified as "pile driving" under Civil Code article 667, such that the absolute liability standard applied to the plaintiff's claim. The court considered the language of article 667, which establishes the absolute liability standard and strictly limits its application to situations where damage results from certain ultrahazardous activities:
Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.
(Emphasis added).
The court observed that "pile driving" is not defined either in the article or in the jurisprudence, and that the deposition testimony of Boh Brothers' and the plaintiff's witnesses conflicted concerning whether the installation of metal sheeting constituted "pile driving." The Third Circuit summarized this court's opinion in Lombard v. Sewerage & Water Board of New Orleans, 284 So.2d 905 (La.1973), which, the Third Circuit stated, "address[ed] the use of sheet metal pilings." In Lombard, the Third Circuit reasoned, this court awarded damages under article 667 where the activities complained of included both the installation of sheet metal and the driving of cylindrical wooden pilings using a steam hammer. This court, the Third Circuit concluded, drew no distinction in Lombard between these two activities in awarding damages under article 667.
Further, the Third Circuit reasoned, pile driving is considered an ultrahazardous activity because of the vibration damage it *46 may cause. The extent of damage depends upon factors such as soil and water table conditions, the size of the pilings, and the distance between the structure and the location of the driving. Because the installation of metal sheeting generates "some vibration," the court reasoned, there is sufficient similarity between this activity and other activities conceded to be "pile driving" (i.e., driving wooden pilings with a steam hammer) to justify the conclusion that the term encompasses the installation of metal sheeting. Thus, the court concluded, installing metal sheeting qualified, as a matter of law, as an ultrahazardous activity under article 667, and the absolute liability standard therefore applied to the plaintiff's claim.[7]
The Third Circuit then addressed the trial court's rulings on the motions involving the City's and Dubroc's entitlement to indemnification and defense under the terms of the contract between Boh Brothers and the City. The court first considered the language of the indemnity provision contained in the contract between Boh Brothers and the City:
In the contract to be awarded, the contracting agency [Boh Brothers] does and will agree to defend, indemnify, and hold forever harmless the Owner and the Engineer / Consultant ... from and against any and all claims, demands, causes of action, and / or rights of action arising out of or resulting from the performance of any of the work and / or obligations contemplated under the contract, including, but not limited to, any and all claims for damages, losses, expenses and / or attorney's fees which result from any breach by the contractor of any of the terms, provisions, conditions, and / or limitations of the contract, as well as any and all claims resulting from the sole negligence, liability, strict liability, and / or fault of the Contractor and / or the joint and / or concurrent negligence, liability, strict liability, and / or fault of the Contractor with any other persons or parties whomsoever.
The obligation of the Contractor under this paragraph shall not extend to the liability of the Engineer / Consultant, his agents or employees arising out of the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications.
The court held that this provision did not require Boh Brothers to indemnify the City or Dubroc "for anything not arising out of its contractual performance." The court reasoned that any agreement to the contrary would be prohibited by La.Rev.Stat. 38:2216(G), which limits the extent to which a public body may require a contractor to indemnify it in the terms of a public contract.[8] Thus, the Third Circuit *47 concluded, the trial court correctly found that Boh Brothers' obligation to indemnify and defend the City and Dubroc was limited to the absolute liability claim, because any broader obligation would violate the statute. However, the court reasoned, its resolution of the absolute liability issue in the plaintiff's favor had the effect of "bring[ing] back into effect the contractual indemnification provision." In other words, the court determined, revival of the absolute liability claim also revived Boh Brothers' contractual obligation to defend and indemnify. The Third Circuit also considered the effect of the additional insured provision in the insurance contract between National Union and Boh Brothers, and concluded that National Union owed the same duty as Boh Brothers to defend the City and Dubroc against the plaintiff's absolute liability claim. Thus, the Third Circuit affirmed the trial court's resolution of the contractual defense issues. But, the court remanded to the trial court for determination of the actual defense cost for the absolute liability issue alone.[9]
The Third Circuit then affirmed the trial court's grant of Dubroc's summary judgment motion and dismissal of Dubroc from the case. As discussed supra, at note five, Dubroc and the plaintiff announced that they had reached an agreement by which Dubroc would pay the plaintiff a small amount of money in exchange for the plaintiff's promise not to oppose Dubroc's motion for summary judgment. The court found that the announcement of the agreement between Dubroc and the plaintiff did not render the trial court's ruling on Dubroc's summary judgment motion an advisory opinion on a moot issue. The court reasoned that the arrangement between Dubroc and the plaintiff was not a settlement, but simply an agreement by the plaintiff not to oppose Dubroc's summary judgment motion. The trial court properly considered all the evidence in the record and, based on its finding that there were no remaining factual issues concerning Dubroc's fault, granted summary judgment for Dubroc, the Third Circuit stated.
Finally, the Third Circuit reversed the trial court's grant of summary judgment on the plaintiff's breach of contract, detrimental reliance, and expropriation claims. The court found that genuine issues of material fact remained that precluded summary judgment on these claims. However, the Third Circuit agreed with the lower court that the plaintiff's res ipsa loquitur claim was without merit, and affirmed the lower court's pro-defense grant of summary judgment on this claim.
Boh Brothers, the City, and National Union all applied for writs in this court. We granted all three applications to consider the court of appeal's rulings on the parties' summary judgment motions, specifically: (1) the holding that the installation of metal sheeting constitutes "pile driving" under La. Civ. Code art. 667, such that the plaintiff's claim is subject to the absolute liability standard; (2) the determination that National Union and Boh Brothers owed defense and indemnity to the City and Dubroc on the plaintiff's absolute liability claim; (3) the dismissal of Dubroc from the case; and (4) the Third Circuit's determination that the plaintiff's breach of contract, detrimental reliance, and expropriation claims should be deferred to the merits. Suire v. Lafayette City-Parish Consol. Gov't, et al., XXXX-XXXX *48 (La.10/15/04), 883 So.2d 1061.[10]

DISCUSSION
We apply a de novo standard of review in considering the Third Circuit's rulings on the parties' summary judgment motions. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750 (citing Schroeder v. Bd. of Supervisors of La. State Univ., 591 So.2d 342, 345 (La.1991)). Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. Code Civ. P. art. 966(B). A genuine issue exists where reasonable persons, after considering the evidence, could disagree. Smith, 639 So.2d at 751. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Id. A fact is "material" if it is one that would matter at trial on the merits. Id. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits. Id. Bearing in mind the standard governing our review of the court of appeal's rulings, we will consider in turn each of the issues the parties have raised.

A. Absolute LiabilityWhether the Installation of Metal Sheeting is "Pile Driving"

We first consider whether the Third Circuit correctly determined that the absolute liability standard of La. Civ.Code art. 667 applied to the plaintiff's claim, because the plaintiff had demonstrated, as a matter of law, that the defendants engaged in the ultrahazardous activity of "pile driving" when they installed metal sheeting in the ground near his home. We find that the plain language of article 667, along with jurisprudence considering this article's application to the activity at issue and deposition testimony submitted by the defendants, do not support the Third Circuit's conclusion. Rather, we conclude, as a matter of law, that the installation of metal sheeting is not "pile driving" under article 667.
We begin the analysis in support of our conclusion with the relevant language of article 667: "[T]he proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives." La. Civ.Code art. 667. This article imposes absolute liability only where the proprietor engages in an "ultrahazardous activity." Id. The article provides that ultrahazardous activities are "strictly limited" to pile driving and blasting with explosives. Id. (emphasis added).
The article's language limiting ultrahazardous activities to pile driving and blasting was added as part of sweeping tort reform undertaken by the Louisiana legislature in 1996. See Acts 1996, 1st Ex.Sess., No. 1, § 1. In light of the 1996 amendment, Louisiana courts are relieved of the responsibility to decide whether a certain activity is ultrahazardous for *49 purposes of deciding whether the absolute liability standard applies. See, e.g., Mossy Motors, Inc. v. Sewerage and Water Bd. of City of New Orleans, XXXX-XXXX (La.App. 4 Cir. 5/12/99), 753 So.2d 269 (discussing the 1996 amendment and noting that "[t]he new definition by amendment defines an ultrahazardous activity legislatively"). Article 667 now clearly articulates that the only cognizable ultrahazardous activities are "pile driving" and "blasting with explosives." Any other activities besides the two the article specifically lists are not ultrahazardous for purposes of article 667. Thus, to qualify for the absolute liability standard, the plaintiff must show that the activity complained of is either "pile driving" or "blasting with explosives." The plaintiff argues, and the court of appeal agreed, that the defendants' installation of metal sheeting constituted "pile driving."
The term "pile driving" is not defined in article 667. However, the Fifth Circuit, in Vicknair v. Boh Brothers Construction Co., XXXX-XXXX (La.App. 5 Cir. 3/30/04), 871 So.2d 514, 521, found that "pile driving" in article 667 did not encompass the installation of sheeting, the precise activity defendants' undertook in the present case. In Vicknair, 871 So.2d at 516, the defendant was hired to perform an emergency sewer repair near the plaintiffs' home. As part of the repair job, the defendant installed steel sheeting using a vibratory hammer, and used a backhoe to drive wood sheeting.[11]Id. at 517. The plaintiffs' alleged that these activities caused damage to their home, including a cracked slab, ceiling, and walls. Id. at 516. The plaintiffs argued that the work performed by the defendant constituted "pile driving," an ultrahazardous activity, and that their claim was subject to the absolute liability standard rather than the more onerous negligence standard. Id. at 521. The Vicknair court disagreed, finding that the activities at issue did not constitute "pile driving." Id. The court noted that the plaintiffs' own expert testified that no pile driving was performed. Id.
Further support for the conclusion that the installation of sheeting is not "pile driving" is found in the deposition of Mike Moore, Boh Brothers' superintendent on site for the Belle Terre Coulee Project. Describing the equipment that would be used to perform "pile driving," as he understood that term, Moore stated,
Oh, you would have a crane with a hundred-foot boom, a big old heavy set of leads, you would have an air hammer, you would have an air compressor half the size of this room to drive  drive the air ... but we didn't have that on this job.
Comparing the installation of metal sheeting and the activity normally considered to be "pile driving" in the construction industry, Moore observed,
[A] sheeting is like a sliver, it just  there's not much vibration because it just  it's like it just slivers on the ground, where a pile you've got something two foot round and you're beating it to go in a pile. The ground up-heaves, it's got  you know, you put a piling in *50 one spot, you've got mud displaced and it's got to go somewhere. But with the sheeting that's why a sheeting is done, is because it's real thin and it just slides in the mud; there's not much vibration.
Moore maintained throughout his deposition testimony that no pile driving was performed in the Belle Terre Coulee project, and distinguished the potential vibrations caused by installing metal sheeting as compared to that caused by conventional pile driving.
We find that the court of appeal erred in holding, as a matter of law, that the installation of metal sheeting in this case constituted the ultrahazardous activity of "pile driving." We find, rather, that the trial court correctly determined, as a matter of law, that the installation of sheeting is not "pile driving." We find that article 667's strict limitation of ultrahazardous activities to pile driving and blasting indicates a legislative intent to restrict application of the absolute liability standard to the activity generally considered to be "pile driving" in the construction industry, namely, using a crane and air hammer to drive broad-based pilings, for the purpose of providing support to a structure. The work the defendants performed in this case is not pile driving as that term is understood in the construction industry. The defendants have demonstrated that the material "driven" in this case, thin metal sheets, and the equipment used, a backhoe, differed from the materials and equipment involved in conventional pile driving.
It is not sufficient to show that there may be some similarities between the activities of installing metal sheeting and conventional pile driving, e.g., the production of vibrations, because article 667 strictly limits ultrahazardous activities to actual "pile driving." The article does not provide for absolute liability for activities that are merely comparable to pile driving. We thus agree with the Vicknair court that a plaintiff's claim regarding the installation of metal sheeting does not qualify for the absolute liability standard under article 667, because such a claim does not involve the ultrahazardous activity of "pile driving."
Moreover, Lombard v. Sewerage & Water Board of New Orleans, 284 So.2d 905 (La.1973), does not require a different conclusion. In Lombard, 284 So.2d at 907, 912-13, on which the Third Circuit relied, this court suggested that the absolute liability standard of article 667 would govern the plaintiff's claim seeking damages related to the defendants' construction activities that included both the installation of sheet piling and the driving of round, wood piling. As the Third Circuit noted, the Lombard court did not distinguish between the defendants' activities in reasoning that article 667 applied to the plaintiff's claim. But, Lombard does not compel the conclusion that article 667 applies to the plaintiff's claims in this case. Lombard was decided more than twenty years before the 1996 amendment to article 667 that strictly limited ultrahazardous activities to pile driving and blasting. The Lombard court thus considered a version of article 667 that differed dramatically from the present version of the article, and the court's conclusions regarding the article's application to the installation of metal sheeting do not control our analysis.
Because we find that the defendants' installation of metal sheeting in this case is not "pile driving" under article 667 as a matter of law, we reverse the court of appeal's judgment on this issue and reinstate the trial court's grant of summary judgment to the City and Boh Brothers and the denial of the plaintiff's motion. Thus, the plaintiff may not avail himself of the less onerous absolute liability standard *51 in proving his claim related to the defendants' installation of metal sheeting near his home.

B. Contractual Indemnity and Defense

We now turn to Boh Brothers and National Union's claim that the Third Circuit erred in finding (1) that Boh Brothers owed a duty to defend the City and Dubroc against the plaintiff's absolute liability claim under the indemnity clause of the public contract between Boh Brothers and the City, and (2) that National Union owed a duty to defend the City and Dubroc against the absolute liability claim under the additional insured provision of the insurance contract between Boh Brothers and National Union.

1. Boh Brothers' Duty Under the Contractual Indemnity Clause
We first consider whether the indemnity clause in the public contract between Boh Brothers and the City imposed a duty upon Boh Brothers as a matter of law to defend the City and Dubroc against the plaintiff's claims. The contract clause required Boh Brothers to defend and indemnify the City and Dubroc against claims arising out of the performance of the work under the contract,
including, but not limited to, any and all claims ... which result from any breach by the contractor of any of the terms... of the contract, as well as any and all claims resulting from the sole negligence, liability, strict liability and/or fault of the contractor and/or the joint and/or concurrent negligence, liability, strict liability and/or fault of the contractor with any other persons or parties whomsoever.
The provision relieved Boh Brothers of the obligation to defend and indemnify Dubroc, as the Engineer / Consultant, for "liability of the Engineer / Consultant, his agents or employees arising out of the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs, or specifications."
We find that the City's and Dubroc's claim for defense under the indemnity agreement is premature under settled law, as these parties have not yet sustained any compensable loss. This court has observed that an indemnity agreement is a "specialized form of contract which is distinguishable from a liability insurance policy." Meloy v. Conoco, Inc., 504 So.2d 833, 839 (La.1987). An indemnitor is not liable under an indemnity agreement until the indemnitee "actually makes payment or sustains loss." Id. Thus, this court has held that "a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid." Id.; Morella v. Bd. of Comm'rs of Port of New Orleans, XXXX-XXXX (La.App. 4 Cir. 10/27/04), 888 So.2d 321, 325. As this lawsuit is still pending, and no determination of liability has been made, the court of appeal erred in finding that Boh Brothers owed a duty to defend, or pay for defense costs, under the terms of the contractual indemnity provision. We therefore reverse the court of appeal's holding that Boh Brothers owed a duty as a matter of law to defend the City and Dubroc, and defer this claim until the lawsuit is concluded and liability is determined.

2. National Union's Duty Under the Insurance Contract
We now consider what duty, if any, National Union owed to defend the same parties. The City and Dubroc claimed in their third party demand against National Union that they were owed a defense as additional insureds under the insurance contract between National Union and Boh Brothers. We observe, at the outset, that the scope of the *52 duty to defend under an insurance agreement is broader than the scope of the duty to provide coverage. Steptore v. Masco Constr. Co., 93-2064 (La.8/18/94), 643 So.2d 1213, 1218. A court must examine the well-pleaded allegations of the plaintiff's petition to determine whether the plaintiff's allegations "unambiguously exclude[]" coverage. Id. Unless unambiguous exclusion of all of the plaintiff's claims is shown, the duty to defend arises. Id. Thus, the duty to defend does not depend upon the outcome of the suit, as it does where the purported source of the duty is an indemnity agreement; rather, where the pleadings disclose "even a possibility of liability" under the contract, the duty is triggered. Id.
The additional insured provision in the contract between Boh Brothers and National Union states that National Union will include as an additional insured "[a] person or organization [Boh Brothers] [is] required in a written contract to name as an insured." But, the provision states, coverage to an additional insured shall not, in any event, exceed the coverage afforded under the policy. And, coverage to an additional insured "shall be limited to the extent of any legally enforceable defense and indemnification clause in the contract with the additional insured."
We find that Dubroc is not entitled to defense from National Union, because Dubroc cannot demonstrate that it meets the first requirement for additional insured status under the National Union policy. Specifically, the policy only provides coverage to parties whom Boh Brothers was required to name as additional insureds in a written contract. The terms of the public contract between Boh Brothers and the City required only that Boh Brothers cover the City and its officials, employees, and volunteers as additional insureds. Thus, Dubroc may not claim a right to defense from National Union as an additional insured.
In contrast, the City clearly satisfies the initial requirement for additional insured status, as the public contract expressly required Boh Brothers to cover the City as an additional insured. As the scope of National Union's obligation to provide additional insured coverage is limited by the terms of the indemnity provision in the contract between Boh Brothers and the City, we must determine whether the terms of the indemnity provision unambiguously exclude the plaintiff's claims. The indemnity provision requires Boh Brothers to indemnify and defend the City against "any and all claims resulting from... the joint and / or concurrent negligence, liability, strict liability and / or fault of the contractor with any other persons or parties whomsoever." The plaintiff has claimed that all defendants are jointly liable under both negligence and strict or absolute liability theories. These claims fall within the coverage of the indemnity provision. Thus, in the absence of any other protest from National Union, the duty to defend the City as an additional insured would be triggered with respect to the plaintiff's joint negligence and strict or absolute liability claims.
But, National Union argues, the insurance agreement only obligates National Union to provide additional insured coverage to the extent of any legally enforceable contractual indemnity provision between Boh Brothers and the additional insured. And, National Union contends, the indemnity provision in the contract between Boh Brothers and the City is unenforceable because it violates public policy as expressed in (1) La.Rev.Stat. 38:2216(G), a statute that limits the extent to which a public body or engineer may require indemnity from a contractor in the terms of a public contract, and (2) La.Rev. *53 Stat. 9:2773, a statute that limits the responsibility of contractors in claims brought under La. Civ.Code art. 667. Because the indemnity clause is unenforceable, National Union argues, the City is not entitled to coverage as an additional insured.
To address National Union's first statutory argument, we must determine whether the contractual indemnity provision at issue violates La.Rev.Stat. 38:2216(G), which provides as follows:
It is hereby declared that any provision contained in a public contract, other than a contract of insurance, providing for a hold harmless or indemnity agreement, or both,
(1) from the contractor to the public body for damages arising out of injuries or property damage to third parties caused by the negligence of the public body, its employees, or agents
. . .
is contrary to the public policy of the state, and any and all such provisions in any and all contracts are null and void.
This statute prohibits any clause in a public contract by which a public body attempts to obtain indemnity for damages caused by the public body's own negligence. See, e.g., Systems Contractors Corp. v. Williams & Assocs. Architects, 99-1221 (La.App. 5 Cir. 9/26/00), 769 So.2d 777, 781 (reasoning that 38:2216(G) "forbids a public entity . . . from requiring a contractor to provide indemnity for the public entit[y's] own negligence"). Therefore, we must examine the language of the contractual indemnity provision to determine whether it purports to indemnify the City against the City's own negligence.
This court has stated that any attempt by a party to obtain indemnity for damages due to the party's own negligence must be expressed in unequivocal terms. Polozola v. Garlock, 343 So.2d 1000, 1003 (La.1977). On its face, the clause at issue does not provide indemnity for the City's and Dubroc's sole negligence. But, the indemnity provision does purport to require indemnity to the City against claims resulting from "the joint and / or concurrent negligence . . . of the contractor with any other persons or parties whomsoever." This broad language conceivably could obligate Boh Brothers to defend and indemnify the City against the plaintiff's claims that Boh Brothers and the City were jointly or concurrently negligent. To the extent that the language of the clause might require defense and indemnity for the City's negligence of a joint or concurrent sort, we hold that the clause violates La. Rev.Stat. 38:2216(G). See, e.g., Jenkins v. State, Dep't of Transp. & Dev., 619 So.2d 1188, 1199 (La.App. 1 Cir.1993) (holding that La.Rev.Stat. 38:2216(G) precluded the DOTD from recovering under an indemnity clause against a contractor where the DOTD had been found concurrently negligent with the contractor), rev'd in part on other grounds, 625 So.2d 1050 (La.1993).
But, this holding does not render entirely null the indemnity clause, in this case, a clause which speaks as well about strict or absolute liability. The specific language of the statute only refers to indemnification against a public body's "negligence," and does not bar contractual indemnity for the City's strict or absolute liability. We hold that the indemnity clause remains valid, so long as it is not interpreted to require indemnification and defense against the City's own sole, joint, or concurrent negligence. So, we reject National Union's argument that the City is not entitled to additional insured coverage for the reason that the entire indemnity clause is null and therefore not "legally enforceable" under the terms of the insurance agreement. *54 And, we find that National Union's duty to defend the City against the absolute liability claim survives the application of La.Rev.Stat. 38:2216(G).
National Union also argues that the indemnity clause is impermissible because it violates public policy as expressed in La.Rev.Stat. 9:2773, which limits a contractor's responsibility in absolute liability claims brought under La. Civ.Code art. 667:
A. It is the public policy of the state that the responsibility which may be imposed on [a] ... contractor ... by reason of the responsibility of proprietors under Article 667 of the Louisiana Civil Code shall be limited solely to the obligation of such ... contractor ... to act as the surety of such proprietor in the event the proprietor is held to be responsible to his neighbor for damage caused him and resulting from the work of such . . . contractor . . . and only in the event the proprietor is unable to satisfy any claim arising out of such damage....
. . .

C. The provisions of this Section . . . may be waived by the contractor.
(Emphasis added). This statute seems to suggest that, with regard to claims brought under article 667, including claims related to pile driving activities, a contractor's responsibility is limited to merely acting as surety to the proprietor on whose property he is engaged in pile driving, in the event that the proprietor is responsible to his neighbor for damage. Not only is the contractor's responsibility limited to acting as a surety, the contractor only has to pay if the proprietor cannot pay. But, this same statute, in subsection (C), says that its provisions, which are protective of contractors, may be waived by a contractor. We find that Boh Brothers waived any limitation on its responsibility for the absolute liability claim through agreeing to the indemnity clause contained in the public contract, and National Union therefore may not benefit from this statute as Boh Brothers' insurer.
Having rejected National Union's statutory arguments for finding the indemnity provision unenforceable, and, having concluded above that the indemnity provision does not unambiguously exclude the plaintiff's claim that the defendants were jointly liable under an absolute liability theory, we hold that National Union owes the City a defense against the absolute liability claim.
Thus, we reverse the court of appeal's holdings, as a matter of law, that (1) Boh Brothers owed a duty to defend and indemnify the City and Dubroc against the absolute liability claim under the terms of the indemnity agreement; and (2) National Union owed a duty to defend Dubroc as an additional insured against the absolute liability claim. But, we affirm the court of appeal's determination that National Union owed a contractual duty to defend the City as an additional insured against the plaintiff's claim of joint absolute liability. We remand this matter to the trial court to determine the City's actual defense costs on the absolute liability claim alone. Because we have dismissed the plaintiff's absolute liability claim as a matter of law, we find that the City's indemnity claim against National Union is now moot.

C. Summary Judgment for Dubroc on All Claims

Boh Brothers argues that Dubroc and the plaintiff entered into a settlement by agreeing that Dubroc would pay the plaintiff "not a whole lot of money"  but only if the trial court ultimately granted Dubroc's motion for summary judgment  and that the plaintiff, in exchange, would not oppose Dubroc's motion for summary judgment. *55 Because these parties had "settled," Boh Brothers contends, the trial court's ruling on Dubroc's summary judgment motion constituted an impermissible advisory opinion on a moot issue.
Courts may not decide cases that are moot, or where no justiciable controversy exists. La. Associated Gen. Contractors, Inc. v. State of La., 95-2105 (La.3/8/96), 669 So.2d 1185, 1193; see generally Chief Justice Pascal F. Calogero, Jr., Advisory Opinions: A Wise Change for Louisiana and Its Judiciary?, 38 LOY. L.REV. 329, 362-67 (1992) (summarizing arguments against permitting the courts to issue advisory opinions). An issue is "moot" where "it has been deprived of practical significance and made abstract or purely academic." La. Associated Gen. Contractors, Inc., 669 So.2d at 1193 (citing Am. Waste v. Martin Parish, 627 So.2d 158 (La.1993)). In contrast, a justiciable controversy exists where there is an "`existing actual and substantial dispute... which involves the legal relations of the parties who have real adverse interest, and upon which the judgment of the court may effectively operate through a decree of conclusive character.'" Id. (quoting St. Charles Parish Sch. Bd. v. GAF Corp., et al., 512 So.2d 1165 (La.1987)).
The requirements for a valid settlement agreement are articulated in Civil Code article 3071. This article defines an agreement of "transaction or compromise" as one by which two or more persons "for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing." La. Civ.Code art. 3071. The article requires that such an agreement either be in writing, or recited in open court, so that it may be transcribed from the record. Id. A compromise agreement, like other contracts, is the law between the parties, and must be interpreted according to the parties' true intent. Boyette v. Riverwood Int'l, 27,980 (La.App. 2 Cir. 3/1/96), 669 So.2d 730, 733, writ granted in part, on other grounds, and denied in part, 96-1418 (La.10/4/96), 679 So.2d 1366. The party who attempts to rely on the existence of a compromise agreement bears the burden of proof to show that the requirements for a valid compromise are present, including that the parties intended to settle. Id.
Boh Brothers, as the party attempting to rely on the existence of a settlement between Dubroc and the plaintiff, must show that the parties' agreement complied with article 3071 and that Dubroc and the plaintiff intended to settle their claims. Boh Brothers argues that Gekakis v. Southern Trace Property Owners Ass'n, 36,609 (La.App. 2 Cir. 12/11/02), 833 So.2d 1116, supports its claim that the agreement between Dubroc and the plaintiff constituted a settlement that rendered Dubroc's summary judgment motion moot. In Gekakis, 833 So.2d at 1117, the plaintiffs sought, among other things, to enjoin a couple, the Mijalises, from constructing a home on an adjacent lot, which, the plaintiffs' alleged, violated the subdivision's protective covenants and building restrictions and impaired their servitude of view. Besides their claims against the Mijalises, the plaintiffs sought injunctive relief and damages from the property owners association, because the association had granted a variance permitting the construction. Id. at 1117-18.
The trial court denied the plaintiffs' request for a preliminary injunction, and granted the Mijalises exception of no cause of action. Id. at 1118. The plaintiffs appealed, urging the appellate court to find, among other things, that the injunction should have been granted. Id. at 1118. *56 While an appeal was pending, the plaintiffs settled with the Mijalises. Id. The plaintiffs and the Mijalises filed a joint motion for partial dismissal, dropping all claims against the Mijalises and attempting to reserve the plaintiffs' rights against the owners association. Id. The court dismissed the appeal, finding that the partial settlement agreement rendered moot the plaintiffs' claims for injunctive relief. Id. at 1118-19. The court reasoned that "[b]y virtue of the settlement, the court cannot issue any injunction, either to stop the [couple] from building their house or to stop the [owners association] from enforcing the variance it granted...." Id. Thus, the ruling the plaintiffs sought would afford "no practical relief," and would amount to an advisory opinion. Id. at 1119.
The Gekakis case does not support Boh Brothers' contention that Dubroc and the plaintiff entered into a valid settlement agreement, and that Dubroc's motion for summary judgment was therefore moot. The issue in Gekakis was not whether the parties had entered into a valid settlement agreement, but only how that agreement affected the pending appeal. Here, in contrast, Dubroc and the plaintiff dispute that they intended to settle their claims, or that they entered into an agreement for that purpose. The Gekakis case does not support Boh Brothers' attempt to establish the existence of a settlement agreement between Dubroc and the plaintiff.
We find that Boh Brothers has not carried its burden of establishing a valid compromise agreement between Dubroc and the plaintiff. Boh Brothers has not presented any evidence demonstrating that Dubroc and the plaintiff possessed any intent to settle. Indeed, no copy of the agreement between Dubroc and the plaintiff even appears in the record.[12] In the absence of this most basic evidence, the court cannot conclude that Boh Brothers has established the existence of a valid compromise agreement under article 3071. Thus, we reject Boh Brothers contention that Dubroc's motion for summary judgment was moot.
Boh Brothers also argues that the court of appeal erred in affirming summary judgment dismissing all claims against Dubroc, because the facts establish a triable issue concerning Dubroc's fault. The party seeking summary judgment bears the burden to establish the absence of a genuine issue of material fact. La. Code Civ. P. art. 966(C)(2); Champagne v. Ward, XXXX-XXXX (La.1/19/05), 893 So.2d 773, 775. If the movant satisfies this initial burden, the burden shifts to the party opposing summary judgment to present factual support adequate to establish that he will be able to satisfy the evidentiary burden at trial. Id. If the adverse party fails to carry this burden, the movant is entitled to judgment as a matter of law. Id.
In this case, Dubroc's motion for summary judgment was not opposed by any party. Boh Brothers' only response to Dubroc's motion consisted of a three-page "Memorandum Relative to Motion for Summary Judgment by [the City] / Dubroc." In this memorandum, Boh Brothers conceded that it "d[id] not dispute" Dubroc's argument that the plans and specifications for the Belle Terre Coulee project were adequate and that it fulfilled all of its obligations under these plans. The only concern Boh Brothers expressed related to the terms of the contract documents, *57 which required the City and Dubroc to "monitor the manner and method of construction utilized by Boh Brothers." Based on these contractual provisions, Boh Brothers argued that Boh Brothers' own motion for summary judgment and Dubroc's motion were interrelated, and that the trial court could not properly grant Dubroc's motion without also granting Boh Brothers' motion: "[I]f the court finds any issues as to whether the work done by Boh Brothers was done in a proper and workmanlike manner, which is adamantly denied, then the court must consider the duty imposed by the contract documents on [the City] and Dubroc to monitor and correct any improper workmanlike practices on the part of Boh Brothers."[13]
Boh Brothers did not produce any evidence demonstrating the existence of an issue of disputed fact concerning Dubroc's performance of its obligations on the Belle Terre Coulee project. Rather, Boh Brothers' argument, in a nutshell, was that Boh Brothers did not believe that Dubroc did anything wrong, but that if the court found that Boh Brothers might have done something wrong, it was necessary to also consider Dubroc's fault. These sentiments were repeated by Boh Brothers' counsel at oral argument on the pending summary judgment motions. Counsel stated that Boh Brothers "[did] not contend that ... Dubroc did anything wrong insofar as the plaintiff's claims." Under these circumstances, we find that Boh Brothers failed to carry its burden to produce factual support to counter Dubroc's motion. Thus, the lower courts did not err in finding that Dubroc was entitled to judgment as a matter of law.

D. The City's Summary Judgment Motion on the Plaintiff's Breach of Contract, Detrimental Reliance, and Expropriation Claims

1. Breach of Contract
The City argues that the court of appeal erred in reversing the trial court's grant of summary judgment in the City's favor on the plaintiff's breach of contract claim. This claim involves Mr. Suire's allegations that, before construction began on the Belle Terre Coulee project, representatives of the City walked through his neighborhood and promised him that any damage to his property would be repaired and/or restored. Specifically, in deposition, the plaintiff stated that nine persons approached his home and represented to him that portions of his patio, decking, and landscaping would have to be removed to accommodate the impending construction, but that "everything would be taken care of," and that "they all ... would be liable" for repairing these damages.[14] The plaintiff conceded that, although he asked for documentation of these representations, none was provided. These representations created an oral contract between the plaintiff and the City, the plaintiff claimed, and the City breached this contract by failing to repair the damage to his property when asked to do so.
*58 Suire, as the party who is demanding performance of an obligation, must prove the existence of the obligation. La. Civ.Code art. 1831; Kilpatrick v. Kilpatrick, 27,241 (La.App. 2 Cir. 8/23/95), 660 So.2d 182, 185, writ denied, 95-2579 (La.12/15/95), 664 So.2d 444. And, as the plaintiff has claimed that the City was obligated to repair damages to his property that exceeded five hundred dollars, proof of this obligation is governed by La. Civ.Code art. 1846, which requires that an oral contract with "price or value in excess of five hundred dollars ... must be proved by at least one witness and other corroborating circumstances." Kilpatrick, 660 So.2d at 185. The plaintiff himself may serve as the witness to establish the existence of the oral contract. Gulf Container Repair Servs., Inc. v. FIC Bus. & Fin. Ctrs., Inc., 98-1144 (La.App. 5 Cir. 3/10/99), 735 So.2d 41, 43. The "other corroborating circumstances" need only be general in nature; independent proof of every detail of the agreement is not required. Kilpatrick, 660 So.2d at 185. But, the other corroboration must come from a source other than the plaintiff. Gulf Container Repair Servs., Inc., 735 So.2d at 43 (finding that a compilation of the plaintiff's expenses, prepared at the plaintiff's direction and based on the plaintiff's memory, could not serve as "other corroborating circumstances" showing that the defendant had agreed to an oral contract to reimburse the plaintiff).
We find that the plaintiff has failed, as a matter of law, to establish the existence of an oral contract under article 1846. The only proof that the plaintiff has provided in this case to establish the existence of such a contract between him and the City has consisted of his own uncorroborated deposition testimony. See, e.g., Lakewood Estates Homeowner's Ass'n, Inc. v. Markle, XXXX-XXXX (La.App. 4 Cir. 4/30/03), 847 So.2d 633, 637-38 (affirming the trial court's judgment that no oral contract was established under article 1846 where the only proof offered was the uncorroborated testimony of the party seeking to prove the contract), writ denied, XXXX-XXXX (La.9/26/03), 854 So.2d 362. The plaintiff has not offered any other proof to show that the City, through the plaintiff's asserted "nine individuals," agreed to repair any and all damages to the plaintiff's home, without limit. Although the plaintiff identified some of the nine individuals who were present for the meeting in his backyard, see supra, at note 14, he has not produced testimony by any of these persons confirming the substance of the meeting. Under these circumstances, where the plaintiff has failed to offer even general corroborating proof, we find that the plaintiff has failed, as a matter of law, to establish the existence of or breach of an oral contract. Thus, the court of appeal erred in reversing the trial court's grant of summary judgment for the City on this claim.

2. Detrimental Reliance
On the basis of the same facts giving rise to his breach of contract claim, the plaintiff has argued that he is entitled to relief under the doctrine of detrimental reliance. The City asserts that the court of appeal erred in reversing the trial court's pro-City grant of summary judgment disposing of the plaintiff's detrimental reliance claim.
The theory of detrimental reliance is codified at La. Civ.Code art.1967:
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered *59 as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
The doctrine of detrimental reliance is "`designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence.'" Babkow v. Morris Bart, P.L.C., XXXX-XXXX (La.App. 4 Cir. 12/16/98), 726 So.2d 423, 427 (quoting Orr v. Bancroft Bag, Inc., 29,046 (La.App. 2 Cir. (1/22/97), 687 So.2d 1068, 1070)). To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc., XXXX-XXXX (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 393, writ denied, XXXX-XXXX (La.6/25/04), 876 So.2d 834; Babkow, 726 So.2d at 427. Significantly, to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract. Babkow, 726 So.2d at 429 (citing Morris v. People's Bank & Trust Co., 580 So.2d 1029 (La.App. 3 Cir.), writ denied, 588 So.2d 102 (La.1991)).
The City argues, initially, that Suire's detrimental reliance claim must fail, as a matter of law, because there was no contract between Suire and the City. But, as noted above, proof of a detrimental reliance claim does not require proof of an underlying contract. This is so because detrimental reliance is not based upon the intent to be bound. Morris, 580 So.2d at 1036 (quoting A Student Symposium, The 1984 Revision of the Louisiana Civil Code's Articles on Obligations: Detrimental Reliance, 45 LA. L.REV. 747, 765-66 (1985)). Rather, the basis of detrimental reliance is "the idea that a person should not harm another person by making promises that he will not keep." Id. Thus, the focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment. Id. Therefore, we reject the City's argument that Suire's detrimental reliance claim should be dismissed as a matter of law because Suire cannot establish a valid, enforceable contract.
The City also argues that Suire cannot show that he actually relied to his detriment on alleged representations that any damage to his property would be repaired, because Suire immediately consulted a lawyer and the City-Parish President's office to attempt to confirm the truth of the representations. However, to establish reliance to his detriment, Suire need only show that he suffered damages not adequately compensated by the defendant. Babkow, 726 So.2d at 428 (finding adequate proof of reliance where it was undisputed that the defendant owed a balance of $2,256 on the plaintiff's chiropractic bills) (citing Autin's Cajun Joint Venture v. Kroger Co., 93-0320 (La.App. 1 Cir. 2/16/94), 637 So.2d 538, writ denied, 94-0674 (La.4/29/94), 638 So.2d 224). Here, it is undisputed that the plaintiff allowed access to his property, and that the City has not paid to repair the damage to the property, as the plaintiff alleges that the City promised to do. Thus, the plaintiff has presented adequate summary judgment proof of this element of his detrimental reliance claim.
Because we find that the City has failed to show that it is entitled to judgment as a matter of law on the plaintiff's detrimental reliance claim, we affirm the court of appeal's *60 reversal of summary judgment on this claim.

3. Expropriation[15]
The City contends that the court of appeal erred in reversing the trial court's grant of summary judgment in the City's favor on the plaintiff's expropriation claim. In this claim, the plaintiff alleges that a drainage bin was placed on his property, three feet beyond the boundaries of the twenty-foot servitude.[16] Placement of the bin in this manner constituted an improper taking of his property, the plaintiff claims, as the City should have obtained a permit or right-of-way agreement to conduct operations outside of the servitude. The plaintiff also claims that he continues to lose topsoil from his yard because of the construction project.[17]
Article 1, section 4(B) of the Louisiana Constitution provides authority for the bringing of an inverse condemnation claim: "Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into the court for his benefit." La. Const. art. I, § 4(B); Howard v. Parish of Jefferson, 03-482 (La.App. 5 Cir. 9/30/03), 857 So.2d 1203, 1206, writ denied, 2003-2999 (La.1/30/04), 865 So.2d 77. To establish inverse condemnation, a party must show that (1) a recognized species of property right has been affected; (2) the property has been taken or damaged in a constitutional sense; and (3) the taking or damaging was for a public purpose under La. Const. art. I, § 4. Avenal v. State, XXXX-XXXX (La.10/19/04), 886 So.2d 1085, 1105 (citing State Through Dep't of Transp. & Dev. v. Chambers Inv. Co., 595 So.2d 598, 603 (La.1992)).
The City argues before this court that it is entitled to judgment as a matter of law, because Suire cannot establish that a "taking" occurred in this case based on his allegations of placement of a drainage bin outside of the City's servitude and continuing topsoil loss. Suire relies on Simmons v. Board of Commissioners, 624 So.2d 935 (La.App. 2 Cir.1993) to support his contention that a cognizable taking of his property occurred in this case. In Simmons, the plaintiffs, owners of residential lots in Bossier City, sued several defendants, including the State and the Board of Commissioners of the Bossier *61 Levee District, alleging that the dredging of a drainage canal behind their lots resulted in a "taking" of their property. Id. at 938. The plaintiffs claimed that, soon after the dredging was completed, the banks of the newly dredged canal "developed crevices and dropped off in large sections" into the canal. Id. This process continued intermittently for more than six years after the dredging ended, the Simmons plaintiffs asserted. Id. In addition, each plaintiff estimated a loss of around 25-150 trees from the rear of his or her lot due to the bank failures. Id. at 943. The trial court found that the plaintiffs had demonstrated a "taking," and awarded damages accordingly. Id. at 949. Considering the issue of whether a "taking" of the plaintiffs' property had occurred, the court of appeal reasoned that a taking occurs where there is a substantial interference with the free use and enjoyment of property. Id. at 951. It is not necessary to show an actual divestiture of title, the court explained, so long as substantial interference is established. Id. The Simmons court concluded that the trial court's finding that a taking had occurred was "unquestionably supported." Id.
Although Suire is correct that Simmons suggests that allegations of soil loss resulting from public dredging activities may support an inverse condemnation claim, the interference with property Suire has alleged in this case is not as extreme as the interference demonstrated in Simmons. However, we cannot find, as a matter of law, that the interference Suire has alleged does not rise to the level of a constitutional "taking" or "damage." We find that the City has not demonstrated its entitlement to judgment as a matter of law on the plaintiff's expropriation claim, and we affirm the court of appeal's reversal of summary judgment in the City's favor.

DECREE
Having addressed all of the parties' assignments of error, our disposition of this case is as follows:
 We reverse the court of appeal's grant of summary judgment to the plaintiff on the absolute liability claim involving the installation of metal sheeting. We reinstate the trial court's grant of summary judgment for the City and Boh Brothers on this claim.
 We reverse the court of appeal's judgment that, under the contractual indemnity provision, Boh Brothers owed a duty to defend the City and Dubroc against the absolute liability claim. We hold that Boh Brothers' obligation to indemnify or defend any party under the provisions of the indemnity agreement may not be determined until the conclusion of the lawsuit.
 We reverse the court of appeal's judgment that National Union owed a duty to defend and / or indemnify Dubroc against the absolute liability claim. We affirm the court of appeal's judgment that National Union owed a duty to defend the City as an additional insured against the absolute liability claim. We remand this claim to the trial court for a determination of the actual cost of defense on the absolute liability claim alone. Having disposed of the absolute liability claim by summary judgment, we find that the City's indemnity claim against National Union is moot.
 We affirm the court of appeal's grant of summary judgment dismissing all of the plaintiff's claims against Dubroc.
 We reverse the court of appeal's judgment overturning the trial court's pro-City grant of summary judgment on the plaintiff's breach of contract claim and reinstate the trial court's grant of *62 summary judgment for the City on this claim. We affirm the court of appeal's reversal of summary judgment on the plaintiff's detrimental reliance and expropriation claims.
 We remand this case to the trial court for proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

ON APPLICATION FOR REHEARING
CALOGERO, Chief Justice, concurring.
In our opinion on original hearing, we found that the plaintiff did not provide sufficient corroborating evidence of an oral contract with value in excess of $500. Accordingly, we reversed the court of appeal and reinstated the district court's pro-Lafayette City grant of partial summary judgment, which dismissed the plaintiff's breach of contract claim. On application for rehearing, the plaintiff directs our attention to some corroborating deposition testimony, admittedly limited, from a roommate who overheard the representations of the City's agents that form the basis of plaintiff's claim.[1] This evidence was not introduced or filed in the district court and thus is not part of the record on which our opinion was based. Therefore, it is not considered on this rehearing application. I thus concur in the denial of the plaintiff's application for rehearing.
NOTES
[1] The box culvert was only intended as a temporary, protective measure. Once the workers had completed their jobs, the sheeting was removed. So, the sheeting never became part of the permanent structure.
[2] This court has previously described a backhoe as a "heavy, tractor-like machine equipped with a mechanical arm or beam and bucket for digging." Lombard v. Sewerage & Water Bd. of New Orleans, 284 So.2d 905, 906 (La.1973).
[3] Some of these latter claims were asserted in Plaintiff's First Supplemental and Amended Petition, filed April 1, 2003.
[4] The City claimed that Boh Brothers provided it a Certificate of Insurance in February 1999, representing that the City and its representatives were covered as additional insureds under its policy issued by National Union.
[5] At the hearing on the motions for summary judgment, Dubroc informed the court that it had agreed to pay the plaintiff an undisclosed sum, "not a whole lot of money but just a small amount of money," in exchange for the plaintiff's agreement not to oppose Dubroc's motion for summary judgment. The plaintiff would only receive Dubroc's payment if Dubroc's motion were granted.
[6] La.Rev.Stat. 9:2771 provides:

No contractor ... shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration, or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor.
[7] The court thus reversed the trial court's grant of summary judgment to the City and Boh Brothers on this issue, and granted the plaintiff's motion for partial summary judgment. The court noted that, although the application of the absolute liability standard would lessen the burden of proof at trial, the plaintiff would still be required to establish causation.
[8] La.Rev.Stat. 38:2216(G) provides:

(G) It is hereby declared that any provision contained in a public contract, other than a contract of insurance, providing for a hold harmless or indemnity agreement, or both,
(1) From the contractor to the public body for damages arising out of injuries or property damage to third parties caused by the negligence of the public body, its employees, or agents, or,
(2) From the contractor to any architect, landscape architect, engineer, or land surveyor engaged by the public body for such damages caused by the negligence of such architect, landscape architect, engineer, or land surveyor
is contrary to the public policy of the state, and any and all such provisions in any and all contracts are null and void.
[9] The Third Circuit reasoned that the trial court erred in casting Boh Brothers and National Union with the entire cost of defense through March 24, 2003, rather than calculating the cost of defense for solely the absolute liability issue.
[10] In its brief to this court, Boh Brothers also argues that it is entitled to statutory immunity under La.Rev.Stat. 9:2771, discussed supra, at note six. The trial court denied Boh Brothers' motion for summary judgment on this claim, and Boh Brothers failed to appeal this determination. Neither did Boh Brothers raise this issue in its writ application. Thus, we decline to consider this argument.
[11] The activities at issue in Vicknair were described more particularly by Dan Mollere, an inspector for an engineering firm. The court of appeal summarized Mollere's testimony as follows:

[T]he steel sheeting was started with a backhoe and then pushed and vibrated down. The wood sheeting was installed by putting a bucket on the backhoe and pushing down the sheeting, but [Mollere] stated that they did not "beat" on the sheeting. When the wood pilings would hit a hard spot, they would "tap" on it with the backhoe. Boh Bros. employees operated the backhoe and pushed the sheeting into the ground.
Vicknair, 871 So.2d at 518.
[12] Dubroc notes in its brief to this court that Boh Brothers could have obtained a copy of the agreement between Dubroc and the plaintiff through written discovery, but failed to do so.
[13] Boh Brothers also argues in its brief to this court that there are disputed issues of fact concerning Dubroc's involvement in identifying the boundaries of the purported servitude that is the subject of the plaintiff's trespass claim. But, Boh Brothers did not raise this specific argument in its Memorandum to the trial court in response to Dubroc's motion. Nor did Boh Brothers argue this point in oral argument before the trial court. And, the court of appeal did not consider this argument.
[14] The plaintiff specifically named some persons present at the meeting in his backyard, including Robert Doyle, Angela (no last name), Roland (no last name), and Mike Cullem, but has not produced any testimony from these people confirming that the meeting occurred as he described.
[15] The plaintiff, the trial court, and the court of appeal all have referred to this claim as one of "expropriation." However, this claim should technically be deemed one of "inverse condemnation," as it involves allegations that a governmental entity has taken property without providing just compensation. See, e.g., Williams v. City of Baton Rouge, XXXX-XXXX (La.4/13/99), 731 So.2d 240, 246 ("`Since a taking or damaging of property may in fact occur without expropriation proceedings by a public body through oversight or lack of foresight, there must be some proceeding whereby an owner may seek redress when his property is damaged or taken without the proper exercise of eminent domain. Such an action is often referred to as `inverse condemnation' ....'") (quoting Reymond v. State through Dep't of Highways, 255 La. 425, 231 So.2d 375, 383 (La.1970)). Nevertheless, for the sake of consistency, we will use the same language as the courts below have used thus far.
[16] To establish the placement of the drainage bin beyond the servitude boundaries, the plaintiff offered, in addition to his own deposition, the deposition of Angela Thibodeaux, a Dubroc employee.
[17] In deposition, Suire described the basis of his expropriation claim:

I'm losing soil. The way it was before, everything was in place, nothing was cracked. I wasn't losing land. Now I'm losing land. I've got a big old drain sitting in the back yard that's about a foot lower than the level than my land itself. Everything is sliding.
[1] The roommate testified that "[the plaintiff] asked Mike Moore if they would replace anything that was damaged and he said `Yes.' Asked him who the insurance company was, and Mike Moore didn't answer."