STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1245


SUCCESSION OF BILLY JAMES TABOR



**********


APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 62786
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and James T. Genovese, Judges.


Peters, J. dissents and assigns written reasons.


                                        **AFFIRMED AS AMENDED.**




**Ronald W. Morrison, Jr.**
**Livaccari Villarrubia Lemmon, L.L.C.**
**101 West Robert E. Lee Boulevard, Suite 404**
**New Orleans, Louisiana 70124**
**(504) 212-3440**
**Counsel for Appellee:**
        **Donna Beth Tabor Carter, Testamentary**
        **Executrix for the Succession of Billy James Tabor**

**Lee H. Ayres**
**Sarah E. Smith**
**Ayres, Warren, Shelton & Williams, L.L.C.**
**Post Office Box 1764**
**Shreveport, LA 71166**
 **(318) 227-3500**
**Counsel for Appellant:**
      **Martha Elliot Tabor**

**PICKETT, J.**

The dispute in this appeal is whether a certain mineral lease bonus should be classified as community property or the wife's separate property. Martha Elliott Tabor appeals the trial court's grant of summary judgment in favor of the Succession of Billy James Tabor (her deceased husband's succession, hereafter referred to as "the Succession"), in which the trial court found that the bonus was community property. For the following reasons, we affirm as amended the trial court's grant of summary judgment in favor of the Succession and affirm the trial court's denial of summary judgment in favor of Martha Elliott Tabor.

## DISCUSSION OF THE RECORD

Billy James Tabor and Martha Elliott Tabor were married on January 1, 2000, in Sabine Parish, Louisiana. Prior to their marriage Mrs. Tabor had inherited immovable property in Sabine Parish which, although it is recognized by the parties as her separate property, gives rise to the issues in this litigation.

On January 5, 2010, Mrs. Tabor executed a written mineral lease whereby she leased her separate property to Petrohawk Properties, LP.[1] The document described the property subject to the mineral lease as totaling 224.118 acres. Although the consideration for the mineral lease is described as "One Hundred Dollars and Other Valuable Considerations ($100.00 & OVC), in hand paid, of the royalties herein provided, and of the agreement of Lessee herein contained," and although the mineral lease purports to be immediately translative of the rights described in its terms, contemporaneous with the execution of the mineral lease,

---

[1] Although the petition refers to "Petrohawk Properties, LP," deposition testimony from Petrohawk employees and documentary evidence that originated with Petrohawk refer to it as "Petrohawk Energy Company." The exact identity of this corporation is not relevant to resolution of the issues before us. Accordingly, we refer to the lessee as "Petrohawk."

1

Petrohawk tendered to Mrs. Tabor a conditional draft for $702,144.00 that contained terms in addition to those found in the mineral lease itself.

The draft contains a notation on the upper left corner which states that it is only to be paid "[o]n approval of lease described hereon, and on approval of title to same by drawee [Petrohawk] not later than 30 banking days after arrival of this draft at collecting bank." The body of the draft contains the following clause:

> The drawer, payee, and endorsers hereof, and the grantors of the lease described hereon, do hereby constitute and appoint the collecting bank escrow agent to hold this draft for the time above specified subject alone to acceptance of payment hereof by the drawee, when said time, and without any right of the drawer, payee or endorsers hereof, or said grantors, to recall or demand return of this draft prior to the expiration of the above specified time, and there shall be no liability whatsoever on the collecting bank for refusal to return the same prior to such expiration.

The receipt signed by Mrs. Tabor when she accepted the draft states:

> The payment of this draft shall be subject to the satisfaction by Lessee of any or all of the following:

> Lessee's full acceptance of title. That title reflects 100% ownership by Lessor and that payment may be proportionately reduced in the event of less than 100% ownership by Lessor.

> In the event that it is determined that lessor's interest is greater than that shown herein, bonus payment shall be increased proportionately.

> All historical Oil and Gas Mineral Leases have expired.

> All mineral servitudes have prescribed to Lessor.

> All Mortgages, if any, being subordinated to the lease.

Slightly over two months later, on March 20, 2010, Mr. Tabor died. Three days later, on March 23, 2010, Petrohawk's bank issued a mineral lease bonus payment of $672,354.00 to Mrs. Tabor. The lesser payment than that set forth in the conditional draft came about because Mrs. Tabor's property was found to contain fewer acres than initially stated in the mineral lease. The parties recorded the mineral lease on March 30, 2010.

Mr. Tabor died testate, naming his daughter by his first marriage, Donna Beth Tabor Carter, as testamentary executrix. Ms. Carter caused the Succession to be opened on April 16, 2010, and, after qualifying as executrix, filed a July 19, 2010 pleading, seeking payment from Mrs. Tabor to the Succession of one half of the amount she received from Petrohawk.[2] The Succession claimed that the mineral lease bonus was part of the community of acquets and gains existing between Mr. and Mrs. Tabor before Mr. Tabor's death.

Both the Succession and Mrs. Tabor filed motions for summary judgment addressing the classification of the mineral lease bonus. Following a November 9, 2010 hearing, the trial court denied Mrs. Tabor's motion and granted the Succession's motion. The trial court concluded that: (1) the mineral lease bonus was a civil fruit of Mrs. Tabor's separate property and, therefore, community property; (2) the mineral lease bonus acquired this status on January 5, 2010, when Mrs. Tabor received the conditional draft; and (3) although Mrs. Tabor only received the actual payment after Mr. Tabor's death, the Succession's claim for one half of the civil fruits survived. The trial court specifically found that there was no wrongdoing on the part of Mrs. Tabor in this matter but noted that any decision other than that rendered could open the door for miscreant spouses to marshal civil fruits and delay their cash arrivals until after the community terminated.[3]

---

[2]Apparently unaware that the amount of the mineral lease bonus had been reduced, the Succession initially sought one half of the initial conditional draft of $702,144.00. The Succession later reduced the demand to one half of the amount actually received.

[3]While we recognize the trial court's concerns in this regard, this finding is more of a policy concern, and we do not consider it in our evaluation of the appeal issues now before us.

3

In her appeal[4] now before us, Mrs. Tabor asserts seven assignments of error:

(1) The trial court erred in granting the Motion for Summary Judgment on behalf of the Estate;

(2) The trial court erred in denying Martha Tabor's Motion for Summary Judgment;

(3) The trial court erred in finding that the mineral bonus Martha Tabor received after the death of her husband is the property of a non-existent community;

(4) The trial court erred in failing to give a credit to Martha Tabor for taxes paid on the mineral bonus she received;

(5) The trial court erred in denying Martha Tabor's Motion for New Trial;

(6) The trial court erred in refusing to certify the December 7, 2010 judgment as final in accordance with Louisiana Code of Civil Procedure Article 1915; and

(7) The trial court erred in awarding possession of one-half of Martha Tabor's mineral bonus to the Estate.

The Succession answered Mrs. Tabor's appeal, asserting it should have been awarded judicial interest on the amount owed by Mrs. Tabor to the Estate. For the following reasons, we affirm as amended the trial court's grant of summary judgment to the Succession and affirm the denial of summary judgment in favor of Mrs. Tabor.

**OPINION**

*Standard of Review*

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[4]Mrs. Tabor had previously attempted to appeal the summary judgment in favor the Succession. However, this court, in an unpublished opinion, dismissed it as an attempt to appeal a partial judgment that had not been designated as immediately appealable for the express reasons set forth in La.Code Civ.P. art. 1915(B). *Succession of Billy James Tabor*, an unpublished opinion bearing docket number 11-346 (La.App. 3 Cir. 4/27/11). After the matter returned to the trial court, an amended judgment was rendered and constitutes the basis of the current appeal.

any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ. P. art. 966(B). When considering the trial court's rulings on a motion for summary judgment, this court will use a de novo standard of review. *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459, 04-1460, 04-1466 (La. 4/12/05), 907 So.2d 37.

### *The Succession's Summary Judgment*

The central question in this appeal is whether the $672,354.00 mineral lease bonus that Petrohawk paid Mrs. Tabor is community property. Louisiana Civil Code Article 2339 states, in pertinent part:

> The natural and civil fruits of the separate property of a spouse, minerals produced from or attributable to a separate asset, and bonuses, delay rentals, royalties, and shut-in payments arising from mineral leases are community property. Nevertheless, a spouse may reserve them as his separate property as provided in this Article.

Mrs. Tabor did not reserve the civil fruits or mineral interests as her separate property as provided in La.Civ.Code art. 2339. Pursuant to La.Civ.Code art. 2339 and the Revision Comments thereto, although a mineral lease bonus received on separate property is not a civil fruit as defined in La.Civ.Code art. 551, it is nonetheless community property by application of La.Civ.Code art. 2339. Thus, although the trial court erred in classifying the mineral lease bonus as a civil fruit, the community classification does not change simply because of that error.

The evidence before the trial court included the deposition testimony of David Richard Deffenbaugh, a Petrohawk vice-president, who explained the process by which Petrohawk acquired the mineral lease. According to Mr. Deffenbaugh, the mineral lease was effective between the parties on January 5, 2010, when Mrs. Tabor executed it and took possession of the conditional draft for $702,144.00. However, he conditioned the lease's effect by stating that the actual payment to Mrs. Tabor would not be made unless and until Petrohawk could

5

confirm that she had valid title in conformity with all the requirements of the January 5, 2010 receipt and that the stated number of acres in the lease was correct. Although the draft provided a thirty-day window for Petrohawk to verify ownership and acreage, Mr. Deffenbaugh testified that this initial period was extended a number of times to give Petrohawk's agents time to accomplish their investigation. Ultimately, Petrohawk determined that the acreage at issue was less than 224 acres, and the final mineral lease bonus payment was based on the lesser acreage.

According to Mr. Deffenbaugh, Petrohawk became aware that there was a discrepancy in the acreage at issue on March 18, 2010, when Katy James, one of its land technicians, received an e-mail from Michelle Cooper, an employee of Bradley Broussard Land Service, Inc., the company retained by Petrohawk to examine the title to the property. The e-mail stated that investigation revealed that Mrs. Tabor's acreage interest was less than initially understood, that the title to the property was otherwise approved, and that Mrs. Tabor should be paid a mineral lease bonus of $672,354.00, rather than $702,144.00. On March 22, 2010, or two days after Mr. Tabor's death, Ms. James sent an e-mail to Mr. Deffenbaugh and to Dick Stoneburner (another Petrohawk official, whose title is not apparent from the record), asking them to approve payment of the lesser amount. The two men approved the lesser amount by e-mail to Ms. James on the same day. The next day, March 23, 2010, Petrohawk issued a new, unconditional draft made payable to Mrs. Tabor in the amount of $672, 354.00.

Louisiana Civil Code Article 2356 states that "[t]he legal regime of community property is terminated by the death or judgment of declaration of death of a spouse, declaration of the nullity of the marriage, judgment of divorce or separation of property, or matrimonial agreement that terminates the community."

6

Thus, when Mr. Tabor died on March 20, 2010, the community regime terminated. The courts have consistently held that "[t]he classification of property as separate or community is fixed at the time of its acquisition." *Robinson v. Robinson*, 99-3097, p. 6 (La. 1/17/01), 778 So.2d 1105, 1113. Therefore, if Mrs. Tabor acquired the mineral lease bonus before the community regime terminated, it is community property; if she acquired it after the community regime terminated, it is her separate property.

Because the facts are not in dispute in this appeal, the sole issue now before us is a purely legal question: when did Mrs. Tabor acquire the mineral lease bonus? This issue is addressed in the Louisiana Civil Law Treatise:

> According to civilian conceptions, nonseparated fruits form a part of the fruit-producing thing and belong to the owner of that thing by right of accession. Upon separation, natural fruits become individual things, and question arises as to how the ownership of these things is acquired.
>
> Civilian sources indicate that the ownership of natural fruits may be acquired either by the effect of separation *(per separationem)* or by collection *(per perceptionem)*. Owners, good faith possessors, and persons having real rights in fruit-producing things acquire the ownership of natural fruits upon separation, without the need of any act on their part. Persons having personal rights acquire the ownership of natural fruits by virtue of an act of collection, namely, by the taking of possession.
>
> The mode of acquisition of civil fruits involves distinct problems. According to traditional civilian ideas, maintained in modern civil codes, civil fruits accrue by virtue of an obligation; hence, one entitled to civil fruits acquires a "claim" for the collection of civil fruits rather than "ownership" thereof. *Accordingly, the mode of acquisition of civil fruits is ordinarily a matter governed by the agreement of the parties and the law of obligations.*

2 A.N. Yiannopoulos, Louisiana Civil Law Treatise: Property § 41 (4th ed. 2001) (footnotes omitted, emphasis added).

As stated above, a mineral lease bonus is not a civil fruit as defined by La.Civ.Code art. 551. However, La.Civ.Code art. 2339 instructs us to treat it as

one. Therefore, the analysis in the Civil Law Treatise is applicable. Following these precepts, we must look to the language of the agreements between Mrs. Tabor and Petrohawk to determine when she acquired a claim to collect the payment.

The draft and the receipt that Mrs. Tabor received and signed on January 5, 2010, specified that the draft would not be paid until Petrohawk determined that Mrs. Tabor had valid title to the land over which the lease was given; that all existing oil and gas leases affecting the land had been cancelled; that all preexisting mineral servitudes had prescribed; that no mortgages encumbered the land, or if any existed, they were subordinated to the January 5, 2010 lease; and that the property contained the acreage described in the lease. Of all these requirements, only the last would not give Petrohawk the right to withdraw from the contract of lease if found not to be in accordance with the original contract. If the property contained more or less than 224.118 acres, the bonus payment would be increased or decreased proportionately. However, if the examination of title revealed title defects, or if there existed oil and gas leases, mineral servitudes, or mortgages affecting the ranking of the January 5, 2010 lease, then Petrohawk would not be bound by the agreement. These are suspensive conditions that had to be met before Petrohawk would authorize payment of the mineral lease bonus.

Louisiana Civil Code Article 1767 provides that "[a] conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive. If the obligation may be immediately enforced but will come to an end when the uncertain event occurs, the condition is resolutory." La.Civ.Code art. 1767. There is no right to enforce an obligation until the suspensive condition is satisfied. *Murry v. Murphy*, 07-720 (La.App. 3 Cir. 11/21/07), 970 So.2d 700.

Until Petrohawk determined that Mrs. Tabor's ownership interest satisfied all the conditions of the January 5, 2010 receipt, Mrs. Tabor had no legal right to enforce or collect payment of the draft. Payment of the draft was conditioned on approval of the lease and title of the leased acreage. The e-mails discussed above show that title was approved before Mr. Tabor died. This was confirmed by Mr. Deffenbaugh when he explained what Petrohawk required before it would authorize payment of the draft. He was asked, "[D]o you recall when the determination was made that the lessor had the correct title to the property whereby the draft instrument could be paid?" Mr. Deffenbaugh answered by explaining that payment of the draft had been extended a couple of times "because of a question with regards to the legal description and the number of net acres that was originally represented to be covered." He was then asked, "[W]ould it be correct to say that this would be the approval of the lease?" He answered, *"It's the approval of title to the lease, which is done by our brokers in the parish records."* (Emphasis added.) Thereafter, Mr. Deffenbaugh was asked if the purpose of the draft was to ensure that the correct number of acres was being leased. He responded, "And that the parties have valid title to what they claim."

Later in his testimony, Mr. Deffenbaugh was asked what his e-mail approving payment was. He answered:

> It's merely an e-mail signed off on by me basically saying that the – my staff has come to us and says please pay the following draft, it is due, and I authorize the payment. . . . [I]t's gone through several channels of the field broker verifying that they're comfortable with the title that they've run. Then that's been run through . . . our inhouse landman. He's looked at the contract, and he sends me a note that says good to pay, and essentially I authorize payment."

The contract was Petrohawk's lease, and it could not have any complaints about its own contract after title was approved and the number of acres was verified. Therefore, Mr. Deffenbaugh's testimony shows that the requirements of

the draft and the release–title and acreage verification–were satisfied on March 18, 2010, two days before Mr. Tabor died. Accordingly, the trial court correctly granted summary judgment in favor of the Estate.

### The Succession's Answer to this Appeal

The Succession asserted in its Answer that the trial court's failure to award judicial interest to it on the sum owed by Mrs. Tabor constitutes error. The Succession prayed for judicial interest on the amount owed by Mrs. Tabor in its Petition for Return of Decedent's Funds, or in the Alternative, Judgment for Conversion of Funds and in its Motion for Summary Judgment.

Louisiana Code of Civil Procedure Article 1921 provides: "[I]nterest in the judgment shall be awarded as prayed for or as allowed by law." Having prayed for judicial interest, the Succession is entitled to it. *Smith v. Quarles Drilling Co.*, 04-179 (La. 10/29/04), 885 So.2d 562. Accordingly, we amend the trial court's judgment to award judicial interest from the date of judicial demand.

### Summary Judgment in Favor of Mrs. Tabor

Mrs. Tabor next argues that the trial court erred in denying her motion for summary judgment and asks this to court render summary judgment in her favor. A party cannot appeal the trial court's refusal to grant his or her motion for summary judgment. La.Code Civ.P. art. 968. Moreover, our affirmance of the trial court's grant of summary judgment in favor of the Estate is a determination that the trial court correctly denied her motion for summary judgment.

### Motion for New Trial

Mrs. Tabor also assigns error with the trial court's denial of her Motion for New Trial. We have addressed her arguments regarding this assignment of error as they pertain to her cross motions for summary judgment but not with regard to her claim that the trial court erred in failing to give her a credit for taxes she paid on

the mineral bonus. This assignment of error is not properly before the court because Mrs. Tabor's Motion for Summary Judgment did not address this issue, and it will not be addressed.

## DISPOSITION

We affirm the trial court's grant of summary judgment in favor of the Succession of Billy James Tabor, and we amend said judgment by awarding the Succession judicial interest from the date of judicial demand. All costs of this appeal are assessed to the Martha Elliot Tabor.

**AFFIRMED AS AMENDED.**

PETERS, J., dissenting.

I respectfully disagree with the majority's affirmation of the trial court's judgment finding that the Tabor Succession is entitled to one half of the $672,354.00 mineral lease bonus Petrohawk paid to Mrs. Tabor for the lease of her separate property. I would reverse the trial court grant of the summary judgment in favor of the Succession and grant Mrs. Tabor's motion for summary judgment to the effect that the Succession is not entitled to one half of the proceeds.

The facts are not in dispute and I have no conflict with the legal principles asserted in the majority opinion. My disagreement with the majority opinion relates to the date the suspensive conditions of the conditional obligations arising from the January 5, 2010 agreement were fulfilled.

The majority correctly concludes that the January 5, 2010 agreement was subject to a suspensive condition set forth on the receipt made a part of that agreement. In this case, the contract was made "subject to the *satisfaction by Lessee* of any or all" of five conditions relating to the title to the property. (Emphasis added.) The majority's position is that this condition was satisfied on March 18, 2010, when Ms. James received an e-mail from the title company retained to examine title to the effect that Mrs. Tabor had merchantable title to the property, but that it did not contain as many acres as originally thought. Mr. Tabor died two days later.

I do not find that notice to Ms. James, a Petrohawk employee who did not have authority to approve the modification to the original agreement, satisfied the

requirements of the January 5, 2010 agreement as set forth in the receipt. "[S]atisfaction by Lessee" implies satisfaction by one authorized within Petrohawk's corporate structure to make that decision. Mr. Deffenbaugh's testimony is clear that he did not receive notice of the title examination results until March 22, 2010, and he immediately authorized payment of the lesser amount. Thus, actual "satisfaction by Lessee" occurred two days after Mr. Tabor died and not two days before, as suggested by the majority.

While agreeing with the majority's conclusion that the trial court's concern about opening the door for miscreant spouses to marshal civil fruits and delay receipt until the community is terminated is a policy concern, I note that the majority's decision has a similar effect. Certainly, had Mr. Tabor continued to live, he would benefit from the separate property mineral interests belonging to his wife. His untimely death and the majority's interpretation of the dates allow his daughter (Mrs. Tabor's step-daughter) a windfall that, in all probability, her father never contemplated. There was no suggestion that Mr. Deffenbaugh withheld authorization of the payment until after Mr. Tabor's death and no evidence that, as the proper representative of the Lessee, he had knowledge of the satisfaction of the conditions before March 22, 2010.

I would reverse the trial court judgment granting the Succession's motion for summary judgment and render judgment granting Mrs. Tabor's motion for summary judgment.