Judgment rendered January 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,305-CW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JANNIE B. SMITH                                    Respondent

versus

CAJUN CULTURES UNLIMITED,                  Applicants
LLC, ET AL.

* * * * *

On Application for Writs from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 628,106

Honorable Brady D. O'Callaghan, Judge

* * * * *

| | |
|---|---|
| BLANCHARD. WALKER, O'QUIN & ROBERTS<br>By: Scott R. Wolf<br>McLaurine H. Zentner | Counsel for Applicant,<br>Cajun Cultures<br>Unlimited |
| DEUTSCH KERRIGAN, L.L.P.1<br>By: John Jerry Glas<br>Derek M. Graves | Counsel for Applicant,<br>Nautilus Insurance<br>Company |
| JANNIE B. SMITH | Counsel for Respondent |

* * * * *

Before PITMAN, STEPHENS, and ROBINSON, JJ.

**STEPHENS, J.**

Applicants, Cajun Cultures Unlimited, LLC ("Cajun Cultures") and Nautilus Insurance Company ("Nautilus"), in this writ grant to docket seek review of the denial of their motion for summary judgment, which sought dismissal of the claims filed by plaintiff, Jannie B. Smith ("Mrs. Smith"). For the following reasons, we grant the writ, reverse the trial court's ruling, and grant summary judgment in favor of the defendants, dismissing Jannie Smith's claims.

## FACTS & PROCEDURAL HISTORY

On July 19, 2019, Mrs. Smith applied for weatherization assistance from the Louisiana Housing Corporation through the Caddo Community Action Agency ("CCAA"), an agency which provides social services to low income, disadvantaged youth, elderly, and disabled persons throughout Caddo Parish. Mrs. Smith filed this application for her home located on Huston Street in Shreveport, Louisiana. The Housing Corporation described the program on its website, stating that the assistance program weatherizes homes to improve heating and cooling efficiency, which leads to reduced energy costs. On October 9, 2019, Mrs. Smith's application was approved, and the CCAA notified her by letter that her name was placed on a waiting list for the weatherization services.

Before any work began on Mrs. Smith's home, the CCAA contracted with Cajun Cultures to perform inspection-related services on Mrs. Smith's home. Michael Gipson, president and sole owner of Cajun Cultures, explained that it provides inspection services for properties where physical

work and/or labor is scheduled to be performed.[1] Cajun Cultures contracted with the CCAA to participate in inspection-related services related to the Weatherization Assistance Program.

On October 14, 2019, Gipson conducted a pre-inspection of Mrs. Smith's home and prepared a pre-inspection report. Gipson noted measures that needed to be performed in order to weatherize the property pursuant to the Weatherization Assistance Program. These measures included the installation of an outside exhaust fan and vent, weather-stripping on the front door, attic and wall insulation, as well as other tasks which were listed in the report. Gipson submitted the pre-inspection report to the CCAA.

In response to the pre-inspection report, the CCAA contracted with Jeffery Rachal to perform the work and the labor required to complete the installation of the items outlined in Gipson's pre-inspection report. The work performed by Rachal took place during early to middle December 2019. Following Rachal's work, Gipson returned to Mrs. Smith's home and conducted a post-inspection of the work performed on the home. Gipson documented his post-inspection in a report and found no deficiencies in the work performed on Mrs. Smith's home by Rachal.

On January 19, 2020, Mrs. Smith's home caught fire. Once the fire department contained the fire, the investigator classified the cause of the fire as undetermined. In his report, the investigator concluded that the fire originated in the attic. The report further stated:

> I cannot eliminate an unknown electrical event within the attic's wiring, nor can I eliminate an electrical or unknown mechanical event with the attic or exhaust fan…The fire was classified as undetermined, as it is unknown of the actual ignition source.

_____

[1] Gipson's wife works as a part-time employee assisting the company with administrative duties. Other than his wife, Gipson has no other employees.

2

Mrs. Smith filed a petition for damages on January 15, 2021, wherein she alleged that the fire was caused by the newly installed insulation in the walls and attic of her home. On November 4, 2022, nearly two years later, defendants Cajun Cultures and Nautilus completed discovery and filed a motion for summary judgment seeking dismissal of all Mrs. Smith's claims. In their motion, defendants alleged that Cajun Cultures was not the contractor that performed the insulation work or any physical work on the property. Instead, Cajun Cultures' contract with the CCAA only required: 1) performance of the pre-inspection of the home to see if it qualified for the weatherization program; 2) production of an itemized list of what work needed to be done on the home; and 3) performance of a post-inspection after the work was completed.

In her opposition, Mrs. Smith alleged that additional time to conduct discovery would afford her with an opportunity to establish the proof necessary to carry her burden at trial. Similarly, Mrs. Smith argued that her deposition and Gipson's affidavit do not clearly establish that there is no genuine issue of material fact or that defendants are entitled to judgment as a matter of law. Due to Mrs. Smith's limited financial resources, she was unable to depose Cajun Cultures' president and the contractor that Cajun Cultures alleged performed the work on Mrs. Smith's home.

At the summary judgment hearing on February 27, 2023, Mrs. Smith appeared *pro se* to argue her case. Before arguments began, Mrs. Smith filed for a continuance and urged that she needed more time to collect evidence. The trial court stated that "everybody is entitled to have their day in court" while expressing sympathy for Mrs. Smith, as it appeared her former attorney sat on the case for two years without doing anything.

However, it denied the continuance on the grounds it would be unfair to defendants.

Once arguments began, defendants urged that Mrs. Smith had not produced any evidence that Cajun Cultures performed any of the work on the property that Mrs. Smith alleged caused the damage to her home, especially where the cause of the fire is unknown. Not only did defendants introduce Mrs. Smith's deposition testimony, but they also introduced Gipson's affidavits wherein he stated that his business is limited to performing inspections only. Likewise, the receipts and other documents obtained from the file of the weatherization project strongly supported that defendants did not perform the work on the home. Instead, contractors not affiliated with Cajun Cultures performed the work. The trial court questioned defendants as to whether Cajun Cultures could be held liable for negligent inspection. However, counsel responded and stated that such liability can only be imposed when the defendant is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time. Here, defendants urged, no evidence suggested that Cajun Cultures knew or should have known of the alleged condition that resulted in the fire. Similarly, Mrs. Smith failed to produce evidence to establish a claim for negligent inspection.

In response, Mrs. Smith made statements regarding her belief that Cajun Cultures was responsible for the damage done to her home. However, she failed to produce any evidence in the opposition to the motion to support her contention that it was Cajun Cultures' work that resulted in the fire that rendered Mrs. Smith's home unlivable.

On March 7, 2023, the trial court denied defendants' motion for summary judgment. The court noted that the evidence and documents presented extensively supported defendants' version of the matter. However, the court stated that Mrs. Smith's deposition testimony could not be disregarded on the basis that her testimony was internally inconsistent. The court noted that Mrs. Smith's deposition stated that Cajun Cultures' employees came to her home to put in insulation and damaged an electrical wire in the wall. In this testimony, she also denied her own signature on several documents that Cajun Cultures relied on to show it was not the contractor. While defendants argued that Mrs. Smith's deposition contains gaps and is inconsistent, the court concluded that such a finding required a credibility determination that is impermissible in a summary judgment proceeding. The court also discussed in its reasons for judgment that although the fire department did not establish a cause for the fire, it did identify a loose wire with burned insulation that appeared to come from an attic exhaust fan.

In its conclusion, the trial court determined that it could not deprive a litigant of the opportunity to present her account of events at trial where there is a disagreement about the underlying facts. Therefore, the court denied the defendants' summary judgment motion. On March 15, 2023, defendants filed a motion of intent to seek supervisory writs. After reviewing the writ application, this writ was granted to docket for oral argument.

## DISCUSSION

Cajun Cultures and Nautilus urge that the trial court erred in finding that Mrs. Smith established a genuine issue of material fact regarding Cajun

Cultures' fault in the fire that damaged her home. To support this contention, defendants suggest that Mrs. Smith produced no evidence or factual support which would allow her to make out a *prima facie* case, much less prove her claims at trial, that defendants bear sole responsibility for the physical labor relating to the work that allegedly resulted in the fire at her home. Furthermore, Mrs. Smith's deposition testimony, defendants allege, further confirms that Cajun Cultures' alleged involvement is mere speculation, which cannot create a genuine issue of material fact for summary judgment purposes. The failure to prove an essential element of her claim—that Cajun Cultures was the cause-in-fact of the fire—should result in a grant of summary judgment in favor of defendants.

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880; *Driver Pipeline Co. v. Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14), 150 So. 3d 492, *writ denied*, 14-2304 (La. 1/23/15), 159 So. 3d 1058. Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 969(A)(2). The procedure is favored and shall be construed to accomplish those ends. La. C.C.P. art. 966(A)(2).

Appellate courts review motions for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Leisure Recreation & Ent., Inc. v. First Guaranty Bank*, 21-00838 (La. 3/25/22), 339 So. 3d 508; *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Elliott v. Continental Casualty Co.*, 06-1505 (La. 2/22/07), 949 So. 2d 1247; *Reynolds*

6

*v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180; *Davis v. Whitaker*, 53,850 (La. App. 2 Cir. 4/28/21), 315 So. 3d 979.

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can be seen only in light of the substantive law applicable to the case. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876; *Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So. 2d 131.

A genuine issue is one about which reasonable persons could disagree. *Suire v. Lafayette City-Parish Consol. Gov't.*, 04-1459, p. 11 (La. 4/12/05), 907 So. 2d 37, 48, *citing Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, (La. 7/5/94), 639 So. 2d 730; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Suire*, *supra*; *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230.

On a motion for summary judgment, the burden of proof rests with the mover. La. C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate

7

all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.*

In her petition, Mrs. Smith asserts that the damage to her property was caused by the exclusive fault and negligence of Cajun Cultures. Liability for negligence is determined by applying the duty/risk analysis. *Pellerin v. Foster Farms, L.L.C.*, 54,829 (La. App. 2 Cir. 1/11/23); 354 So. 3d 790; *Johnson v. Lowe's Home Centers, LLC*, 52,602 (La. App. 2 Cir. 4/10/19), 267 So. 3d 1198. Under the duty/risk analysis, a plaintiff must prove five separate elements: 1) the defendant had a duty to conform his conduct to a specific standard (the duty element); 2) the defendant's conduct failed to conform to the appropriate standard (the breach element); 3) the defendant's substandard conduct was cause-in-fact of the plaintiff's injuries (the cause-in-fact element); 4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and 5) proof of actual damages (the damages element). *Farrell v. Circle K Stores, Inc.*, 22-00849 (La. 3/17/23), 359 So. 3d 467; *Lambert v. Zurich Am. Ins. Co.*, 55,064 (La. App. 2 Cir. 6/28/23) 366 So. 3d 1285. If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable. *Id.* At trial, Mrs. Smith would bear the burden of proving the elements of her claims against the defendants. For defendants to prevail on summary judgment, they are required to show an absence of factual support for any of the elements of Mrs. Smith's cause of action. *See Lambert*, *supra*.

The evidence submitted by defendants shows that Cajun Cultures was not the contractor who did the insulation work in the weatherization project. Defendants pointed to the absence of factual support for Cajun Cultures to be the cause-in-fact of the damage to Mrs. Smith's property. Documents supplied by the CCAA to defendants include Cajun Cultures' pre-inspection report, the itemized list of the work to be done, the post-inspection report, and the invoices and payment made by the CCAA to Cajun Cultures. Cajun Cultures received less than $600.00 for the inspections and evaluations done on the property, whereas the total charges for the materials and labor performed on the property amounted to several thousand dollars.

A document entitled "Hold Harmless Agreement" indicates that Mrs. Smith agreed to indemnify and hold the CCAA harmless for bodily injury or property damage arising out of the furnishing of labor and materials connected to the weatherization project on her property. This document is signed by Jeffrey Rachal as contractor, not Cajun Cultures. Another document which contains provisions, lists of materials, and responsibilities related to the work on the home is signed by Mr. Rachal as the subcontractor. All of the above documents indicate that Mr. Rachal, not Cajun Cultures, performed the actual work on the home.

In response to defendants' motion and evidence, Mrs. Smith failed to provide factual support that Cajun Cultures performed physical work on the home that resulted in the fire. Mrs. Smith merely repeated her allegations in the petition that Cajun Cultures was the contractor who performed the work that damaged her home. Likewise, Mrs. Smith failed to produce any evidence to support her allegations. Given Mrs. Smith's failure to show she can carry her burden of proof at trial, there is insufficient evidence to

establish a genuine issue of material fact.  As a result, defendants' motion for summary judgment should have been granted.

## CONCLUSION

For these reasons, we grant defendants' writ application, reverse the judgment of the trial court, and grant defendants' summary judgment motion, dismissing Mrs. Smith's claims against Cajun Cultures and Nautilus.  Costs of this appeal are to be split between the parties in equal proportions.

**WRIT GRANTED; JUDGMENT REVERSED.**